544

**COMMITTEE IN SOLIDARITY WITH THE PEOPLE OF EL SALVADOR (CISPES), et al., Plaintiffs,**

v.

**William F. SESSIONS, et al., Defendants.**

**Civ. A. No. 88–3430–GHR.**

United States District Court, District of Columbia.

May 9, 1990.

See also, D.C., 705 F.Supp. 25.

Melvin L. Wulf, Beldock Levine & Hoffman, Margaret L. Ratner, Michael Ratner, Alan Levine, Steel Bellman & Levine, New York City, Joe K. Crews, Law Offices of James C. Barber, Dallas, Tex., James Klimaski, Klimaski & Miller, Washington, D.C., for plaintiffs.

R. Joseph Sher, Sr. Trial Counsel, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

ORDER

REVERCOMB, District Judge.

The instant complaint was filed by individuals and organizations who were investigated by the Federal Bureau of Investigation ("FBI") for alleged terrorist activity pursuant to a tip by a paid informant who was later determined to be untrustworthy. The plaintiffs allege that the investigation was a violation of their rights under the first amendment and the Privacy Act of 1974, 5 U.S.C. § 552a.

The defendants, the FBI and its current Director, have conceded that the investigation was flawed *ab initio* and have accordingly made arrangements to dispose of all of the records that were accumulated throughout the course of the investigation. Additionally, the defendants have disciplined the appropriate FBI personnel and amended the guidelines for the conduct of future investigations.

This matter is before the Court pursuant to the defendants' motion to dismiss.

## I. *First Amendment Claim*

This Court is without the jurisdictional authority to hear the plaintiffs' first amendment claims. Article III "case or controversy" is a jurisdictional predicate which is not satisfied in the instant action because of mootness and lack of standing.

### A. Mootness

■ Article III of the Constitution limits the subject matter jurisdiction of the federal courts to the adjudication of actual ongoing controversies between litigants. *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). The plaintiff's personal stake in the controversy between the parties must continue to exist throughout the duration of the case or it becomes moot. *Sosna v. Iowa,* 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975). This limitation on the jurisdiction of federal courts requires the Court to settle only those legal questions that will "affect[ ] the behavior of the defendant towards the plaintiff." *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987).

At the time that the defendants filed their motion to dismiss, the Director had instructed that no disclosure be made without authority from senior officials at FBI Headquarters. The question of the ultimate disposition of those records, including what permanent restrictions should be placed on disclosure of information secured in the investigation, was under study. The Director testified before the House of Representatives that the charge of the working group is "to very carefully devise guidelines that will be sure, and make sure that those names [of individuals in the CISPES files] are not released unless there has been a very careful review and a very definite reason requiring [release]." More specifically, the Director testified that he had "ordered senior personnel at the Bureau to develop criteria for restricting dissemination of information in CISPES files except in response to Freedom of Information Act and Privacy Act requests."

Those guidelines are now complete and the defendants have entered into an agreement with the National Archives and Records Service regarding the disposition of the CISPES records. The agreement is embodied in a letter of February 24, 1990 from the Director of the FBI to the Archivist of the United States and contains the approval signatures of both the Director and the Archivist. The agreement provides for the transfer of all CISPES records, including spinoff files and indices, to the Archives and the conditions under which such records can be retrieved and the purposes for which such records can be used. Accordingly, the defendants contend that the instant complaint is moot where the plaintiffs' prayer for relief seeks:

[t]hat a mandatory injunction issue, directing defendants to recover, collect and seal all copies of FBI files and records relating to the CISPES investigation and any of its spinoffs, including any and all indices, index cards, information in computer data bases or indices, and records or information contained in any other FBI or other federal agency files, and deposit such material in the National Ar-

chives upon terms and conditions to be determined by the Court.[1]

Notwithstanding the agreement for disposal of the CISPES records, the plaintiffs contend that the instant case is not moot on the ground that the agreement does not cover copies of CISPES records that may have been provided to other entities. Plaintiffs correctly state that the agreement between the defendants and the Archivist

> makes no reference to the CISPES information in the FBI files that was disseminated in computer data banks such as those maintained by the Terrorist Research Analytic Center (TRAC), the Terrorist Information System (TIS), and the Drug Enforcement Agency, or to CISPES information from the FBI files that was disseminated to the Department of State, foreign police agencies and governments, and to United States embassies and FBI attaches abroad.

*Plaintiffs' Reply to Supplemental Statement of the Defendants* at 2–3. In short, the plaintiffs contend that the agreement fails "to treat *all* CISPES files and records." *Id.* at 3.

As a practical matter, however, the defendants can only dispose of records over which they have custody or control. Information and records that the defendants have already disseminated, *i.e.,* to other federal agencies or foreign governments, are beyond the disposal power of the defendants. Moreover, although other entities may have copies of the records, possession by these entities is not sufficiently related to the plaintiffs' asserted injury to establish an actual case or controversy. As further discussed below, the principal standing injury that the plaintiffs assert is the fear or apprehension that they may be prejudiced in career opportunities with the government because a security check with the FBI incident to an application for federal employment would disclose the CISPES records. As the plaintiffs state, their fear is "based on their knowledge that FBI files are routinely made available in connection with any application for government employment." *Plaintiffs' Memorandum* at 10. However, all of the CISPES records contained in the FBI files that would be used for security checks on applicants have been disposed. Although CISPES records may have been disseminated to other entities, the possibility that a federal employer is going to contact these other entities— *i.e.,* foreign governments or United States embassies—for security checks pursuant to the employment process is too remote to be tenable. Accordingly, the relief that the FBI has provided, namely, the disposal of *all* of *its* records moots out any fear of injury that the plaintiffs assert.[2]

### B. Standing

The requirement of standing is premised on "Article III of the Constitution [which] confines the federal courts to adjudicating actual 'cases' and controversies.'" *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Standing is necessary to the jurisdiction of this Court to hear this matter. *See Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (whether a plaintiff "has made out a 'case or controversy' ... within the meaning of Article III ... is the threshold question in every federal case, determining the power of the court to entertain suit.").

The Supreme Court has developed a three-prong model by which to assess article III standing. A plaintiff must al-

---

1. The plaintiffs also seek a declaratory judgment that the defendants violated their constitutional rights and contend that this Court should rule on this issue even if it determines that there is no further relief that this Court could order against the defendants. However, to proceed with the constitutional issue solely for a symbolic vindication of plaintiffs' rights *regardless of* the availability of further relief is precisely the judicial activity or advisory opinion which is prohibited under article III.

2. The plaintiffs further contend that they are entitled to discovery to determine whether the defendants have in fact disposed of all of the FBI records pursuant to the agreement that they entered into with the Archivist. The plaintiffs have articulated no basis or made any showing on which to challenge the good faith of the defendants in complying with the agreement.

lege: (1) a "personal injury" that is (2) "fairly traceable to the defendant's allegedly unlawful conduct," and (3) which is "likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751, 104 S.Ct. at 3324; *see also Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978); *Dellums v. United States Nuclear Regulatory Comm'n*, 863 F.2d 968 (D.C. Cir.1988). In the instant case, this Court finds that the plaintiffs have failed to demonstrate the first of these standing requirements and that their purported injury is "too abstract, or otherwise not appropriate, to be considered judicially cognizable." *Allen*, 468 U.S. at 752, 104 S.Ct. at 3325.

The burden of establishing standing is on the plaintiffs. More fully,

> the Court must accept as true all material allegations of the complaint and construe it in favor of plaintiffs, and it may consider matters extrinsic to the complaint itself deemed supportive of plaintiffs' standing. [Citation omitted.] If however, the facts alleged do not permit a reasonable inference that defendants' putatively unlawful conduct caused the harm, or that if the relief requested is afforded the injury will be rectified, standing has not been shown, and the complaint must be dismissed.

*Khalef v. Regan*, 85–1 U.S.Tax Cas. (CCH) ¶ 9269 (D.D.C.1985), *aff'd*, No. 85–5274 (D.C.Cir. Sept. 19, 1986). *See generally Fulani v. Brady*, 729 F.Supp. 158 (D.D.C. 1990).

This Court rules that the plaintiffs have not established a constitutionally cognizable injury. The plaintiffs contend that their concern in this action for injunctive relief is "what disposition will be made of the records produced by the investigation that the government has already conducted." *Plaintiffs' Memorandum* at 10. More specifically, the plaintiffs allege injuries "to employment and related benefits, to reputation, to their physical safety, to their exercise of constitutionally protected activity" that will "result from the continued dissemination of the information collected by the government." *Id.* at 11.

This Court finds the plaintiffs' allegations of injury speculative. For example, as to the purported harm to reputation, it is well accepted that FBI investigatory reports are hardly viewed as tantamount to findings of fact. More fundamentally, however, the defendants concede that the instant investigation was meritless and the plaintiffs have essentially received a full and public exoneration. As this Court stated in its Memorandum and Order denying the plaintiffs' motion for preliminary injunction, "[t]he fact that Director Sessions has come forward and testified before Congress that the investigation was baseless should suffice to quell many of the fears of those plaintiffs who are concerned that the FBI's use of derogatory information about CISPES in interviews might have injured their reputations."

■ Plaintiffs also express fears and apprehension about their prospects for employment and career advancement with the federal government based on the CISPES records contained in the FBI files. However, such fears are speculative. First, none of the plaintiffs have expressed a desire to engage in government employment. Moreover, assuming that at some time in the future some of the plaintiffs would apply for government employment, the particular jobs to which the plaintiffs apply may not even require a security check with the FBI. Furthermore, assuming that the FBI records were checked and the plaintiffs were implicated in CISPES activities, the plaintiffs still may be offered the jobs to which they applied. Accordingly, plaintiffs' apprehensions of prejudice in the federal job market have no concrete basis on which this Court can base a finding of tangible injury pursuant to standing analysis.

## II. *Privacy Act*

■ This Court must also dismiss the plaintiffs' privacy act claims. First, the Privacy Act does not confer standing upon organizations on their own or purporting to sue on behalf of their members. *Cf. Ridgeley v. Merchants State Bank*, 699 F.Supp. 100 (N.D.Tex.1988). Moreover, the form of

injunctive relief sought by the plaintiffs is unavailable under the Privacy Act. In the instant case, the plaintiffs seek disposal of the CISPES records. However, in *Doe v. Stephens*, 851 F.2d 1457 (D.C.Cir.1988), the Court provided:

> The Act's subsection on civil remedies authorizes entry of injunctive relief in only two specific situations. *See* 5 U.S.C. § 552a(g)(2)(A) (authorizing courts to order agencies to amend an individual's record); 5 U.S.C. § 552a(g)(2)(B) (authorizing entry of reasonable attorney's fees). In so doing, as we have held, *the Act precludes other forms of declaratory and injunctive relief,* ...

*Id.* at 1463 (emphasis added). Finally, the plaintiffs' claims are time barred where they failed to bring their claims within the two years that they knew or had reason to know that the records existed. *Diliberti v. United States*, 817 F.2d 1259 (7th Cir.1987).

Accordingly, it hereby is

ORDERED that the defendants' motion to dismiss be, and the same hereby is, GRANTED; and it is further

ORDERED that the plaintiffs' complaint be, and the same hereby is, DISMISSED.